WOLF, J.
Appellant challenges his conviction for child neglect without causing great bodily harm in violation of section 827.03(2)(c), Florida Statutes (2011). He argues the State failed to present a prima facia case, and thus the trial court erred in denying his motion for judgment of acquittal. We agree and reverse.

Facts

The State charged appellant with one count of aggravated child abuse and one count of child neglect causing great bodily harm stemming from an incident involving a fifteen-month-old girl named A.B. § 827.03(2), (3)(b), Fla. Stat. (2011).
At trial, the State presented evidence that appellant’s girlfriend left him to babysit her four children, one of whom was A.B., while she went to pay her home phone bill and have her phone reconnected. While she was gone, her ten-year-old son called her from a neighbor’s phone and stated, “hurry up and get home, [appellant] says [A.B.] fell out of the crib.” The mother returned home and found the child “unresponsive,” with her head slumped down, and her breathing was “off.” The mother called 911, and the child was taken to the hospital. A police officer responded to the hospital as a matter of procedure, and the first responders indicated that it looked as if it had been an accident. A.B.’s doctor then came and told the officer, “we’re good, you can leave.” However, doctors later performed more tests and discovered that A.B. had extensive internal injuries, including bleeding on the brain and behind the eyes and liver damage.
A nurse practitioner testified these internal injuries were caused by abuse in the form of violent shaking and blunt force trauma, and could not have been caused by A.B. falling from her crib. She also testified these injuries would not have been apparent to the first responders based only on a visual inspection of A.B. However, she stated these internal injuries could cause symptoms including irritability, changes in behavior, loss of consciousness, or need for lifesaving measures such as CPR. She stated the abuse that caused A.B.’s injuries occurred sometime during the twenty-four hours prior to A.B.’s admittance to the hospital.
Appellant testified that he asked the ten-year-old boy to call both 911 and the mother. He testified the mother arrived within 10 minutes of the call, and because the paramedics had not yet arrived, she also called 911. He denied abusing the child, and he also presented evidence that implicated the mother in the abuse.[1]
The State’s theory of the case was that appellant committed aggravated child abuse by causing A.B.’s internal injuries, and he committed child neglect by instructing the 10-year-old boy to call the mother rather than 911 when he realized A.B. was in respiratory distress. Appellant moved for judgment of acquittal, arguing there was no evidence of either abuse or neglect. The trial court denied the motion. The jury acquitted appellant of the count involving aggravated child abuse and, as to the other count, convicted him of the lesser-included offense of child neglect not causing great bodily harm.
*1240 On appeal, he renews his argument that there was insufficient evidence of child neglect. We agree.

Child Neglect

We review an order on a motion for judgment of acquittal de novo. Jones v. State, 790 So.2d 1194, 1196 (Fla. 1st DCA 2001). In moving for judgment of acquittal, a defendant admits (1) facts stated in evidence and (2) conclusions favorable to the adverse party. Lynch v. State, 293 So.2d 44, 45 (Fla.1974). The legal test for considering a motion for judgment of acquittal on appeal is “whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment.” Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981). “A judgment of acquittal should only be granted when the jury cannot reasonably view the evidence in any manner favorable to the opposing party.” Criner v. State, 943 So.2d 224, 225 (Fla. 1st DCA 2006) (citing Lynch, 293 So.2d at 45).
Section 827.03 defines “[n]eglect of a child” as:
1. A caregiver’s failure or omission to provide a child with the care, supervision, and services necessary to maintain the child’s physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the child; ....
Neglect of a child may be based on repeated conduct or on a single incident or omission that results in, or could reasonably be expected to result in, serious physical or mental injury, or a substantial risk of death, to a child.
§ 827.03(3)(a), Fla. Stat. (2011) (renumbered § 827.03(l)(e) (2012)).
Child neglect without causing great bodily harm is prohibited by section 827.03(3)(c), which states:
(c) A person who willfully or by culpable negligence neglects a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 827.03(3)(c), Fla. Stat. (2011) (renumbered § 827.03(2)(d) (2012)).
This statute does not define “culpable negligence” or “willfully.” However, the standard jury instruction for child neglect, which was given here, defines culpable negligence and distinguishes it from a mere failure to use ordinary care:
I will now define what is meant by the term “culpable negligence”: Each of us has a duty to act reasonably toward others. If there is a violation of that duty, without any conscious intention to harm, that violation is negligence. But culpable negligence is more than a failure to use ordinary care for others. For negligence to be called culpable negligence, it must be gross and flagrant. The negligence must be committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily harm.
Fla. Std. Jury Instr. (Crim.) 16.5.
Similarly this court has defined “culpable negligence” as “that degree of negligence that is so egregious, and flagrant, it would support a charge of manslaughter in case of death.” Jones v. State, 912 So.2d 686, 688 (Fla. 1st DCA 2005) (citations omitted).
*1241 The Second District defined “willfully” in the context of child neglect as meaning the defendant “acted voluntarily and consciously, not accidentally.” Arnold v. State, 755 So.2d 796, 798 (Fla. 2d DCA 2000) (citing Black’s Law Dictionary 1773 (4th ed. 1968)). The Arnold court also discussed the legislative history of the offense of child neglect and the level of negligence the State must prove:
By its language, the legislature has demanded that the State prove more than mere negligence to criminalize child neglect. And the legislature has required that the defendant’s acts or omissions create a “reasonably expected” potential for the child to suffer, at a minimum, serious injury. In establishing these elements for the crime of third degree felony child neglect, the legislature has responded to a series of decisions from the Florida Supreme Court declaring unconstitutional prior versions of this statute. The primary infirmity of the 1975 version of the statute was that it criminalized simple negligence and punished those with no intent to do wrong. See § 827.05, Fla. Stat. (1975); State v. Winters, 346 So.2d 991 (Fla.1977). The 1991 version of section 827.05 had added language addressing the financial ability of the caregiver and the degree of impairment or risk to the child, but those elements did not overcome the lack of scienter. See State v. Mincey, 672 So.2d 524 (Fla.1996); State v. Ayers, 665 So.2d 296 (Fla. 2d DCA 1995). The latest version of the statute, under which Mr. Arnold was convicted, has attempted to remedy that shortcoming by adding the “willfully or by culpable negligence” language and has further attempted to define what actions or omissions constitute “neglect.”
Id. at 797-98. Arnold explained this legislative history “emphasize[s] how difficult it has been for the legislature to define this crime.” Id. at 798. The resulting precedent has established that “only the most egregious conduct, done either willfully or with criminal culpability, should be criminalized.” Id.
Appellant argues here, viewing the evidence in a light most favorable to the State, the State failed to present a prima facia case of child neglect. We agree.
The State’s theory of the case, both below and on appeal, was that appellant committed child neglect by asking the ten-year-old boy to call A.B.’s mother rather than 911 when he realized the child was in respiratory distress. The State asserts that the mother’s errand was on the other side of town, which means she must have been far away when she received the call, and thus it must have taken her a long time to return. The State argues the fact that appellant waited with the child during this lengthy period of time without calling 911 constituted child neglect. However, the State failed to present any evidence to support these theories. The State presented no evidence establishing exactly how far away the phone store was, how long the mother had been gone, where she was when she received the call, or how long it took her to return. The only evidence establishing a timeline was appellant’s testimony that the mother returned home within 10 minutes of the call.
The State argues this case is analogous to Moore v. State, 790 So.2d 489, 491 (Fla. 5th DCA 2001), in which a father admitted he allowed his baby to fall head-first into the side of the bathtub, and that the baby was lethargic during the two days that followed, but he failed to seek medical attention. The baby died, and doctors later determined the child had suffered a skull fracture. Id. at 491-92. The Fifth District found there was sufficient evidence to sustain a conviction for child ne- *1242 gleet, reasoning “[t]o allow the baby to fall in a manner which produced a skull fracture, to recognize that the baby was noticeably inactive in the following two days, and to refrain from seeking medical counsel during this subsequent period, could constitute culpably negligent conduct which caused great bodily harm.” Id. at 492.
The case at hand is clearly distinguishable. Appellant did not wait two days to seek medical counsel for the child. He called the child’s mother when he realized she was in distress, and the mother returned home to evaluate the child and called 911. The only evidence in the record regarding a timeline was that the mother returned home within 10 minutes of the call.
Further, the State failed to provide evidence that appellant’s choice to call the mother rather than 911 was “gross and flagrant” negligence that was “committed with an utter disregard for the safety of others” such that he “must have known, or reasonably should have known, was likely to cause death or great bodily harm,” as required to prove culpable negligence. Fla. Std. Jury Instr. (Crim.) 16.5. The mother and appellant both testified that the girl’s breathing was “off,” but that she was breathing. The State emphasizes that the child had serious internal injuries. However, the jury absolved appellant of responsibility for those injuries when it acquitted him of aggravated child abuse. There was no other evidence presented that appellant should have known her injuries were so significant that any delay in calling 911 was likely to cause her death or great bodily harm. The State’s own witness testified that the fall from the crib could not have caused such serious injuries, and the severity of the injuries was not initially apparent to the first responders or the doctors. While appellant’s choice to seek assistance by calling the child’s mother rather than 911 may have been a failure to use ordinary care, it did not rise to the level of willful or culpable negligence under the facts as presented in this case. Therefore, we reverse.
REVERSED.
LEWIS, C.J., and ROBERTS, J„ concur.

. Although appellant testified he asked the boy to call 911, apparently the boy did not. Also, an investigating officer testified that appellant said he asked the boy to call the mother, but appellant did not mention asking him to call 911.