IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JOVITA C. IBEAGWA,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NO. 1D12-2602

_____/

Opinion filed July 1, 2014.

An appeal from the Circuit Court for Duval County.
Adrian G. Soud, Judge.

Sheila Callahan and Michael Jerome Titus, Assistant Regional Conflict Counsels, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General; Jay Kubica and Trisha Meggs Pate, Assistant Attorneys General, Tallahassee, for Appellee.

ROBERTS, J.,

The appellant, Jovita Ibeagwa, appeals her conviction for two counts of aggravated manslaughter of a child following the drowning deaths of her two children, aged six and three. On appeal she raises three arguments, two of which merit discussion. First, she argues that the trial court erred in denying her motion

for judgment of acquittal where the State failed to present a *prima facie* case that her action of leaving the children unsupervised constituted culpable negligence to support the charges of aggravated manslaughter. She also argues that improper comments made by the prosecution during closing argument constituted fundamental error and had the effect of lowering the State's burden of proof. Viewing the evidence in the light most favorable to the State, we affirm the appellant's conviction.

This Court reviews the trial court's denial of a motion for judgment of acquittal *de novo*, with the evidence and all reasonable inferences from the evidence being viewed in a light most favorable to the State. See Ramos v. State, 89 So. 3d 1119, 1122 (Fla. 1st DCA 2012) (citing Jones v. State, 790 So. 2d 1194, 1196-97 (Fla. 1st DCA 2001)). Viewing the facts in the light most favorable to the State, the evidence showed that sometime between 4:00 p.m. and 7:00 p.m., a neighbor observed the naked children playing, unsupervised, with a ladder in the appellant's backyard. At around 6:30 p.m., the appellant left her two children home alone in order to report to work. At around 8:30 p.m., the appellant spoke to her husband on the phone, at which time she was aware that the children had been unsupervised at home for approximately two hours. The appellant did not return home at this time and instead continued to work. At around 10:00 p.m., she received a call to return home immediately as there had been an accident. At some

2

time between the time the appellant left for work and approximately 10:00 p.m., the children gained access to a neighbor's pool and drowned.

The appellant was charged with two counts of aggravated manslaughter of a child by culpable negligence under section 782.07(3), Florida Statutes (2010), which provides,

> A person who causes the death of any person under the age of 18 by culpable negligence under s. 827.03(3) commits aggravated manslaughter of a child, a felony of the first degree. . . .

Section 827.03(3) defines "neglect of a child" to include a "caregiver's failure or omission to provide a child with the care, supervision, and services necessary to maintain the child's physical and mental health. . . ." "Neglect may be based upon repeated conduct or on a single isolated incident or omission. . . ." § 827.03(3)(a), Fla. Stat. (2010). Child neglect is criminalized when a person "willfully or by culpable negligence neglects a child." § 827.03(3)(b), Fla. Stat. (2010).

The term "culpable negligence" is not defined in the statute, but the standard jury instruction, which was given in the instant case, defines it to include negligence that is "gross or flagrant," a course of conduct showing "reckless disregard of human life," an "entire want of care as to raise a presumption of a conscious indifference to consequences," or such "wantonness or recklessness" as

3

to equal the intentional violation of the rights of others.  <u>See</u> Fla. Std. Jury Instr. (Crim.) 7.7.

Culpable negligence must be determined upon the facts and the totality of the circumstances in each particular case.  <u>Behn v. State</u>, 621 So. 2d 534, 537 (Fla. 1st DCA 1993).  If the evidence is sufficient to establish a jury question regarding whether a defendant is culpably negligent, then affirmance is required.  <u>See</u> <u>Ramos</u>, 89 So. 3d at 1121.

Here, the facts taken in the light most favorable to the State showed that the appellant drove away from her home, leaving her two young children home alone without confidence that they would be supervised.  She remained away from home for a period of hours, despite knowing that the children were unsupervised for a large portion of that time.  In addition, the neighbor's testimony suggested that the appellant was or should have been aware that the children had access to a ladder in the backyard.  Had the evidence only shown that the appellant left her children unsupervised for a period of minutes, culpable negligence may not have been established.  However, leaving two young children home alone for a period of hours and failing to return after she knew that the children had been unsupervised constituted sufficient evidence to make a *prima facie* case of child neglect by culpable negligence.  This constituted sufficient evidence to send the issue to the jury, whose duty it was to resolve any conflicts in the evidence and credibility of

4

the witnesses. As such, the trial court properly denied the motion for judgment of acquittal.

The appellant also argues that comments by the prosecutor in closing misstated the burden of proof and constituted fundamental error. These unobjected-to comments did not rise to the level of fundamental error. Moreover, any harm was cured when the jury was properly instructed on the law and that closing arguments should not be considered as law or evidence.

AFFIRMED.

THOMAS, J., CONCURS WITH OPINION; CLARK, J., DISSENTS WITH OPINION.

THOMAS, J., CONCURS WITH OPINION.

I concur with Judge Roberts' opinion in this tragic criminal case involving the deaths of two very young children, aged six and three. Whether we might have reached a different verdict is certainly understandable, given the evidence described in the dissenting opinion, but this is not dispositive under the controlling law. Our standard of review requires us to review the evidence under the following rule: "In moving for a judgment of acquittal, a defendant 'admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.'" Beasley v. State, 774 So. 2d 649, 657 (Fla. 2000) (quoting Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974)). By this standard, the State's evidence was sufficient to present the case to the jury to decide whether Appellant's conduct of leaving her children unattended constituted culpable negligence.

The case of State v. Brooks, 17 So. 3d 1261 (Fla. 2d DCA 2009), is persuasive and comparable to the facts here. There, the Second District correctly held that leaving an infant, who drowned, and his two-year-old sibling in a bathtub with running water, was sufficient evidence of child neglect, based on culpable negligence for the offense of leaving the two-year-old child unattended. The differences in age and maturity between Appellant's children and the children in Brooks are not significant enough, in my view, to hold that Appellant's conduct

6

cannot be submitted to a jury, as a matter of law. Had Appellant's children been older, my view might be different as to whether the evidence was sufficient to withstand a motion for judgment of acquittal.

Furthermore, although the State presented evidence that Appellant said she called her husband on her cell phone when she left for work and he told her he would be home shortly, this cannot establish a lack of culpable negligence as a matter of law, especially where the State presented evidence that this phone call never actually occurred. Under Lynch, a jury could reasonably infer that Appellant did not call her husband when she left the children unattended, or the jury could reasonably conclude she did place the call.

In addition, there was no evidence that Appellant attempted to confirm that her husband arrived home within a reasonable time to supervise the young children. In fact, **two hours** after she had left them, Appellant discovered that the children remained unsupervised, yet still failed to immediately go home to verify their safety.

Thus, while I could certainly agree that Appellant might not reasonably foresee that her children would die in a tragic and unexpected accident, her conduct of leaving her young children unattended for several hours was likely to result in serious injury to the children, which is all that the State was required to present to the jury. See Burns v. State, 132 So. 3d 1238, 1240 (Fla. 1st DCA

7

2014). Appellant's conduct created a "'reasonably expected' potential for the child to suffer, at a minimum, serious injury." Id. at 1241 (quoting Arnold v. State, 755 So. 2d 796, 798 (Fla. 2d DCA 2000)). Although this court reversed the conviction in Burns, it correctly recognized that the State is required to present evidence establishing that Appellant's conduct was "'gross and flagrant . . . negligence . . . committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily harm.'" Id. at 1240 (quoting Fla. Std. Jury Instr. (Crim.) 16.5). In Burns, the only evidence established was that the defendant had a child call the child's mother within ten minutes, rather than calling 911; this court found this insufficient as a matter of law to support a conviction of child neglect without causing great bodily harm.

Here, by contrast, the evidence, and its reasonable inferences, established that Appellant left her two young children unattended for several hours, and a witness observed the children playing on a ladder in the back yard, which Appellant knew or should have known was occurring. Such conduct, in my view, can support a conviction for aggravated manslaughter based on child neglect. Under section 827.03(1)(e)1., Florida Statutes (2010), Appellant failed to "provide a child with the . . . supervision . . . necessary to maintain the child's physical . . .

8

health . . . ." Such child neglect was the result of Appellant "willfully or by culpable negligence neglect[ing] a child." § 827.03(2)(b), Fla. Stat. (2010). It was not necessary that the State present evidence establishing that Appellant should have known that the children might die in a terrible accident; it was only incumbent on the State to present competent evidence that Appellant committed acts of child neglect that were gross and flagrant, such that it could be said that Appellant's conduct could be "reasonably expected" to result in the children suffering great bodily harm or serious injury.

The State's evidence met this test. Acknowledging that reasonable people may disagree with the jury's verdict, the Florida Supreme Court has repeatedly held that a trial court's order denying a motion for judgment of acquittal will not be reversed if there is competent, substantial evidence to support the verdict. Chamberlain v. State, 881 So. 2d 1087, 1104-05 (Fla. 2004). In Chamberlain, the court cited Lynch, holding that "[t]he courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. **Where there is room for a difference of opinion** . . . the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge." Id. at 1104 (citing Darling v.

9

State, 808 So. 2d 145, 155 (Fla. 2002) (quoting <u>Lynch</u>, 293 So. 2d at 44-45)) (emphasis added).

Here, while there may have been room for a "difference of opinion" as to whether Appellant's conduct constituted culpable negligence, the trial court did not reversibly err in submitting the case to the jury for its ultimate conclusion. Thus, I concur in Judge Roberts' opinion affirming the trial court's ruling denying Appellant's motion for judgment of acquittal.

CLARK, J., DISSENTS WITH OPINION.

I disagree and would reverse the convictions for aggravated manslaughter of a child because the State failed to present a prima facie case of aggravated manslaughter by culpable negligence. The denial of Appellant's motion for judgment of acquittal ("JOA") was reversible error.

While "culpable negligence" is not defined by statute, courts have established a case-law definition. Culpable negligence is reserved for egregious acts: "consciously doing an act which a reasonable person would know is likely to result in death or great bodily harm to another person, even though done without any intent to injure anyone but with utter disregard for the safety of another." Arnold v. State, 755 So. 2d 796, 797 (Fla. 2d DCA 2000) (quoting Azima v. State, 480 So.2d 184, 186 (Fla. 2d DCA 1985)). It is also reserved for acts of "a gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects." Arnold v. State, 755 So. 2d 796, 797 (Fla. 2d DCA 2000) (quoting State v. Greene, 348 So. 2d 3 (Fla. 1977)). Culpable negligence requires "that entire want of care which would raise the presumption of indifference to consequences; or such wantonness or recklessness or grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others, which is equivalent to an intentional violation

11

of them." Arnold v. State, 755 So. 2d 796, 797 (Fla. 2d DCA 2000) (quoting State v. Greene, 348 So. 2d 3 (Fla. 1977)).

To withstand the motion for JOA, the State's evidence was required to support a prima facie case for each element of the charged offense, aggravated manslaughter of a child (§ 782.07(3), Fla. Stat.) by culpable negligence (§ 827.03(3), Fla. Stat.). It is well-settled that in ruling on a motion for JOA, the evidence must be considered in the light most favorable to the State. However, the light most favorable to the State means that conflicts in the evidence are resolved in favor of the State's position, not that we disregard the portions of the State's evidence which make the State's case weaker, or might support the defense.

At the close of the State's case, the evidence was insufficient to prove a prima facie case that Appellant's negligence exceeded mere negligence and constituted the gross and flagrant actions demonstrating a reckless disregard for the life of her children such that her actions could be considered equivalent to an intent that her children be severely injured or killed. In addition to the facts emphasized by the majority, the State's witnesses, Investigators Medina and Hinton, each testified that Appellant told them she voluntarily left her children at home alone at approximately 6:30 to 7:00 p.m. to report for a night shift at Shands Hospital. They explained she only did this after she had called her husband at his work at a nursing home when Appellant learned that she was called in to work a shift that

12

night.  According to their testimony, she also told both officers that she told her husband to come home to watch the children, and that he assured her he was close to home and would arrive in a few minutes, or five minutes.  At the time Appellant made these statements to the officers, she did not know the children were dead and had no opportunity to coordinate her story with her husband.

Officer Hinton testified that the father's statement to him was consistent with Appellant's—that the parents had communicated around 6:30 p.m. and that he had told her to go ahead and leave for work because he would be there shortly. This testimony of the State's witnesses was not direct evidence of Appellant's state of mind at the time she left her children alone, but it did constitute indirect evidence of Appellant's lack of wanton or reckless disregard for the safety of the children.

The State presented no evidence that conditions in the home itself were dangerous or that the neighbors or anyone else had ever observed Appellant acting with reckless indifference regarding the children's safety.  There was no evidence that Appellant knew the children would leave the home (or that they ever had), that they were capable of making their way to the neighbor's swimming pool, or were capable of climbing over the fence to gain access to the neighbor's pool.  When compared to other cases where a caregiver's acts constituted culpable negligence, the State's evidence was insufficient to send this case to the jury.

For instance, in <u>Ramos v. State</u>, 89 So. 3d. 1119 (Fla. 1st DCA 2012), this Court upheld the conviction of a mother for aggravated manslaughter of a child by culpable negligence where her nineteen-month-old child drowned in a retaining pond. The State presented evidence that the mother had frequently and repeatedly failed to supervise her child in the months leading up to the child's death. Neighbors had saved the child from danger before when he was roaming outside alone; neighbors had often found the child near the retaining pond and had taken him back to his inattentive mother who continued—even when he was returned to her apartment—to ignore and neglect him. Another neighbor had saved the child from drowning at the apartment pool complex when he played there with no supervision and fell into the spa. This Court concluded that in these circumstances, the totality of the mother's conduct on the day the child died, as well as the past neglect and indifference showing a pattern of egregious behavior, "was sufficient to create a jury question of whether [the mother] was culpably negligent in breaching her duty" toward the child. The evidence was sufficient for a jury question because her repeated lack of supervision—especially where her child had frequently been unsupervised while close to the retention pond where he ultimately died—was quite likely to result in severe injury or death.

In <u>State v. Nowlin</u>, 50 So. 3d 79 (Fla. 1st DCA 2010), we reversed the dismissal of a charge of neglect of a child with great bodily harm where a two-

14

year-old was mauled by the babysitter's pit bull. A critical issue was whether the babysitter was culpably negligent where the dog had bitten another child six months before, the babysitter signed paperwork about the previous incident as required by animal control officers, and the child's mother had directed the sitter to care for the child in the child's home, not the sitter's home due to the dog's presence there. This Court found the State had made a prima facie showing of culpable negligence where it established the babysitter's "reckless indifference or grossly careless disregard for the safety of the two-year-old child in her care." Nowlin, 50 So. 3d at 83. Under those circumstances, the facts were sufficient to infer the caregiver's awareness that serious physical injury was likely to befall that child.

In State v. Brooks, 17 So. 3d 1261 (Fla. 2d DCA 2009), the evidence showed that the mother left her children, aged nine months and two years, unsupervised in a bathtub for up to 40 minutes with the bath water running. She had intended to return to the children quickly, but became involved visiting with her aunt in another room and "lost track of time." The nine-month-old drowned. The jury found the mother not guilty of manslaughter (by culpable negligence) of the infant, but guilty of the lesser included offense of neglect of a child by culpable negligence regarding the older child. After the jury verdict, the trial court granted JOA but the appellate court reversed. The Second District Court of Appeal found

the evidence sufficient to support the charge of child neglect by culpable negligence and thus sufficient to support the jury's verdict. Because the evidence showed that the mother left the very young children in an inherently dangerous situation—a tub with running water for up to forty minutes—her degree of negligence was equivalent to an intentional act. Serious bodily injury or death was *likely* to occur in that situation.

Finally, although not a manslaughter case, dismissal of a charge of child neglect by willful or culpably negligent act was reversed in State v. Wynne, 794 So. 2d 642 (Fla. 2d DCA 2001). There, the father and caretaker of the six-year-old stopped on an exit ramp for I-295 and Hillsborough Avenue in the city of Tampa. As punishment for fighting with another child in the vehicle, the father removed the boy from the car, left him alone on the interstate ramp, and drove away. Such egregious conduct was certainly likely to result in serious physical injury or death to the child. The court noted that "the evidence establishe[d] that Wynne acted willfully or with culpable negligence in creating this dangerous situation." Wynne, 794 So. 2d at 644.

Compared to the inherently dangerous situations and repeated courses of conduct described in the cases above, even if the State's evidence at the close of its case had been sufficient to withstand the first motion for JOA in this case, the motion presented at the close of all the evidence should have been granted. After

16

the State's own witnesses offered some evidence of Appellant's motive and state of mind when she left the children at home, the defense offered additional evidence that Appellant's negligence did not rise to culpable negligence. Appellant's hospital co-worker described the ordinary child-care arrangements between the families and how these arrangements fell through on the night of the deaths. Appellant's testimony was consistent with the testimony of the officers about her state of mind when she left the children and her belief that her husband, the children's father, was only minutes away. She also testified that her duties at the hospital did not allow her to call her husband again until 8:40 p.m., when he again assured her he was almost home. She stated that the children were not mischievous or disobedient, had never expressed an interest in the neighbor's pool, and were afraid of the neighbor's dog. Appellant testified that she left the children inside the home with a video playing, instructed them to stay inside and told them their father would be there soon. She had never known the children to "escape" from the home and wander about.

At the close of all the evidence, the motion for JOA due to the lack of proof of the State's prima facie case for culpable negligence—in other words, negligence so severe as to equate to an intentional exposure to danger likely to cause serious injury or death—should have been granted. When the elements of a crime have not been proven by competent substantial evidence, the trial judge may not simply

overlook the dearth of evidence and send it to the jury to see what might happen. "Clearly if the evidence is not sufficient to support the elements of the alleged crime, the trial court cannot simply decide to submit the case to the jury anyway." Jones v. State, 790 So. 2d 1194 (Fla. 1st DCA 2001).

During trial and at oral argument, the State's theory was that Appellant's behavior amounted to wanton and reckless behavior sufficient to constitute culpable negligence because when a child is left unsupervised, "anything is foreseeable" and "anything might happen." The possibility that "anything might happen," no matter how attenuated or unforeseeable, does not support a conclusion that Appellant was culpably negligent. The horrific result of the bizarre chain of events presented in this case is not a proper basis upon which Appellant's negligence may be magnified to the level of culpable negligence.

To presume that one is culpably negligent because "anything might happen" makes manslaughter by culpable negligence a strict liability crime, dependent upon the end result and regardless of the defendant's actions and mental processes. An isolated miscalculation where there is no evidence that the parent was otherwise recklessly or grossly careless under the facts she believed at the time does not establish a prima facie case of culpable negligence even where, as here, the end result is an unimaginable tragedy costing the lives of both of this family's children. To hold a caregiver culpably negligent for "anything [that] might happen"

18

whenever children are left unsupervised, without regard for a caregiver's state of mind, mistaken belief of the situation, or any other factor affecting the defendant's thought process negates any requirement of "a state of mind so wanton or reckless that the behavior it produces may be regarded as intentional." Bowen v. State, 791 So. 2d 44 (Fla. 2d DCA 2001); see also Sexton v. State, 898 So. 2d 1187 (Fla. 1st DCA 2005).

In fact, at oral argument for this case, the State advanced the strict liability standard to its logical conclusion. The Court inquired of the State if leaving two young children with no history of "escape" or any other indicia of mischievousness—like the children in this case—home alone for ten minutes to procure medicine would constitute culpable negligence. The State answered that no matter what event occurred, leaving the children was sufficient evidence of heightened culpable negligence to go to a jury. With this, I cannot agree. The key is not whether Appellant was negligent. Instead, the sole and determinative question is whether her negligence rose to the necessary heightened standard of egregiousness and wantonness, evincing indifference towards the death of the children. That question must be answered in the negative.

The State's evidence was insufficient for a prima facie showing of the necessary element of culpable negligence and the trial court erroneously denied JOA. I would reverse the judgment and sentence.

19