OSTERHAUS, J.
Appellant Jennifer Kish appeals her convictions on three counts of culpable negligence under section 784.05(1), Florida Statutes, for allowing her children, ages 10, 8, and 7, who were sick with cold and upper respiratory symptoms, to be left unsupervised for two to three hours after school until adults arrived home from work. Ms. Kish argues that the trial court should have granted her motion for judgment of acquittal because the evidence was insufficient to establish culpable negligence. We agree and reverse.
I.
A.
On January 26, 2012, Ms. Kish was called away to Jacksonville in the middle of the day because her mother had a medical emergency. Ms. Kish expected to return home late, after her children’s school day ended, so she called the school and arranged for the school bus to drop off her 10-, 8-, and 7-year-old children at the home of her former husband and his wife (the “Meadows”). Ms. Kish had not rerouted her children like this before, but the Meadows were trusted caregivers. They were the father and step-mother of the 10-year-old child and shared custody of her with Ms. Kish.[1] The children had taken the school bus to the Meadows’ house before and the Meadows regularly welcomed the children in their home. Ms. Meadows was home by 8 PM on most school days, or at least by 6 PM on days when the Meadows’ other children stayed late at school.
Ms. Kish did not advise the Meadows of her emergency on January 26th, or that the children would be coming over after school.[2] And no one was home when the school bus dropped off the children at the Meadows home at about 3:45 PM. Nevertheless, the children let themselves in the house, did homework, and watched TV. At some point within the next couple hours, the 8-year-old began vomiting, the 7-year-old’s nose began to run, and the *227 10-year-old testified that she was “running a high fever and panicking.” Nonetheless, the 10-year-old cared for her siblings by cleaning them up in a bath and looking for medicine. When the Meadows arrived home around 6 PM, they were surprised to see the children in their home, sick and unsupervised. And they were quite upset with Ms. Kish.
Ms. Meadows found all three children to have fevers and she gave them medicine. The Meadows tried, unsuccessfully, to contact Ms. Kish (only later did they learn from a Facebook post that Ms. Kish was in a Jacksonville emergency room with her mother). The Meadows also contacted the police, in order to file a report, and the father of the two younger children. Hours later, they took the children to the emergency room.
At the hospital, the eldest was diagnosed ■with bronchitis and the other two with upper respiratory infections, or common colds. The record indicates that Ms. Kish arrived back from Jacksonville at about 9 PM, but found no one home at the Meadows’ house. Having no information about where anyone was, she searched for them for a couple of hours before ultimately arriving at the hospital around 11 PM. The police arrived later and, after questioning Ms. Kish, they arrested her.
B.
The State charged Ms. Kish with three counts of felony child neglect. A bench trial was held in October 2012, in which the State’s ease set forth the basic facts described above. After the state rested, Ms. Kish moved for a judgment of acquittal asserting that the State had presented insufficient evidence establishing a probability of harm to the children, or establishing a total want of care. But her motion was denied. In the trial court’s view:
None of [the children] seemed overly mature.... And the facts of the matter are [that the children] were sick before school started and a call was made to the school to put them on a bus to go to an empty house. Why that second call wasn’t made to the dad to say, hey, your child and my other two children are coming to your house because I have an emergency, I don’t know. But that’s what the facts are before the court now, and I do find that it rises to the level of ... culpable negligence.
Defense counsel renewed the argument for acquittal in its closing.
Ultimately, the trial court acquitted Ms. Kish of child neglect, but it found her guilty of three counts of the lesser offense of culpable negligence. The court withheld adjudication and sentenced Ms. Kish to 12 months’ probation. Ms. Kish then filed a timely appeal of the trial court’s decision to deny her motion for a judgment of acquittal.
II.
A.
This Court reviews the trial court’s denial of a motion for judgment of acquittal de novo, with the evidence and all reasonable inferences from the evidence being viewed in a light most favorable to the State. See Ramos v. State, 89 So.3d 1119, 1122 (Fla. 1st DCA 2012) (citing Jones v. State, 790 So.2d 1194, 1196-97 (Fla. 1st DCA 2001)). It is a crime in Florida to expose another person to personal injury through culpable negligence. § 784.05(1), Fla. Stat. “Culpable negligence” isn’t statutorily defined, but has been defined in caselaw consistent with the standard jury instruction used by the trial court in this case:
For negligence to be called culpable negligence, it must be gross and fla *228 grant. The negligence must be committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily harm.
Fla. Std. Jury Instr. (Crim.) 16.6. And the facts are critical; culpable negligence is determined “upon the facts and the totality of the circumstances in each particular case.” See Ibeagwa v. State, 141 So.3d 246 (Fla. 1st DCA 2014).
B.
In denying the motion for judgment of acquittal, the trial court determined that Ms. Kish could be criminally culpable due to the children’s ages, the uncertain prospect of adult supervision at the Meadows home, and the children’s sicknesses. But we find this evidence insufficient to sustain Ms. Kish’s conviction for culpable negligence. The facts simply don’t show Ms. Kish to have had a “gross and flagrant ... utter disregard for the safety of [her children or] a course of conduct that [she] must have known, or reasonably should have known, was likely to cause death or great bodily harm.”
Rather, the evidence showed Ms. Kish tried to provide for her children’s safety on an especially difficult day. Encountering a family emergency mid-day while the children were at school, Ms. Kish called the children’s school and changed their bus route because she didn’t expect to be home when the children arrived. She opted to have the school bus drop her children off at the home of trusted caregivers, who were often home at that time and invariably welcomed the children. Now, it is true that Ms. Kish did not confirm whether the Meadows would be home to actually supervise the children. And she should have. But her incomplete regard for her children’s care in this instance didn’t manifest an “utter disregard” for their safety.
Moreover, the children in this case weren’t so young that leaving them alone in a familiar home for a couple hours could be considered a gross, flagrant, and utter disregard for their safety, or an act “likely to cause death or great bodily harm.” The children were 10-, 8-, and 7-years-old. And though the trial court did not consider them “overly mature,” their comparative ability to care for themselves wholly distinguishes this ease from those in which culpable negligence convictions have been upheld. See, e.g., Ibeagwa, 141 So.3d 246 (involving children ages 3- and 6-years-old who were left unsupervised for several hours in a home where a ladder allowed them to access a neighbor’s pool); Ramos, 89 So.3d 1119 (involving repeated failure to supervise a nineteen-month-old child who drowned in a retaining pond); State v. Brooks, 17 So.3d 1261 (Fla. 2d DCA 2009) (reversing trial court’s order granting motion for judgment acquittal in child neglect case where a nine-month-old and 2-year-old were left unattended in a bathtub for between fifteen and forty minutes). The evidence in this case bears out the importance of age differences. Here, the 10-year-old could and did provide appropriate care for her sick siblings until the Meadows arrived.
The facts of Bernard, v. State, 769 So.2d 1066 (Fla. 3d DCA 2000), come closest to this case. There, the court reversed a probationer’s child neglect conviction for leaving a 7-year-old child unsupervised in an apartment for forty-five minutes while walking to pick up her baby from daycare. Although the probationer in Bernard phoned the 7-year-old from the daycare to check on her (whereas Ms. Kish sent her children to a home with no landline telephone), this fact wasn’t dispositive, nor *229 substantively distinguishes that case.[3] Simply put, the State cannot establish culpable negligence based on a parent’s decision to leave children ages 10-, 8-, and 7-years-old in a familiar home without adult supervision for a few hours after school, doing their homework and watching TV until an adult arrives. See also Dep’t of Health and Rehab. Services v. S.L., 1994 WL 1028645 (Fla.Div.Admin.Hrgs.) (noting that “ours is a nation of latch-key children and working class parents who have few choices of adequate child care.”).
Finally, that all three children were sick with upper respiratory issues does not change the calculus on Ms. Kish’s culpability. However manifest the children’s symptoms became that evening after school, they had gone to school, studied a full day at school, and taken the school bus to the Meadows house without evidence of being significantly debilitated. There was no evidence, for instance, that the school contacted Ms. Kish (or the other parents) about any child being too sick or debilitated to remain at school that day. And when the Meadows arrived home, the State’s evidence wasn’t that they immediately rushed their daughter or the other children to the emergency room. Rather, they delayed visiting the hospital for hours so that they could file a police report and contact the father of the younger children. Indeed, the hospital ultimately diagnosed the two younger children with “upper respiratory infections or colds” and their fevers were broken by over-the-counter medication. This evidence of illness doesn’t support the conclusion that the children were at much risk at all from being left unsupervised for a few hours after school, much less that Ms. Kish exposed them to death or great bodily harm. Nor did the State put on any medical testimony that the children risked great harm or death at the Meadows’ house that afternoon. See Weeks v. State, 832 So.2d 954 (Fla. 2d DCA 2002) (reversing a child neglect conviction for want of medical evidence).
III.
And so, viewing the evidence in a light most favorable to the State, we conclude that the State’s evidence does not support Ms. Kish’s conviction. While Ms. Kish’s actions that day may have been inconsiderate to the Meadows and unwise on a day when the children were experiencing upper respiratory symptoms, the evidence failed to satisfy the higher threshold required to criminally convict Ms. Kish for culpable negligence. We reverse and remand with instructions for the trial court to enter an acquittal on all three charges.
REVERSED and REMANDED.
ROBERTS, and WETHERELL, JJ., concur.

. Ms. Kish was married but separated at the time to the father of the two younger children — the 8- and 7-year-olds — but they were in the process of getting divorced. She had sole custody of the two children.

. The Meadows did not have a landline telephone at their house, but both Mr. and Ms. Meadows carried cell phones.

. Nor did the trial court mention the lack of a landline telephone as a factor in denying the motion for judgment of acquittal.