NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANTHONY RISTAU,                        )
                                       )
            Appellant,                 )
                                       )
v.                                     )      Case No. 2D15-3237
                                       )
STATE OF FLORIDA,                      )
                                       )
            Appellee.                  )
_____)

Opinion filed October 26, 2016.

Appeal from the Circuit Court for Polk
County; Kelly P. Butz, Judge.

Howard L. Dimmig, II, Public Defender, and
Megan Olson, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Lisa Martin, Assistant
Attorney General, Tampa, for Appellee.


SILBERMAN, Judge.

            Anthony Ristau seeks review of his judgment and sentence for neglecting

a child causing great bodily harm.  Ristau was charged after he left his sick one-year-old

son in the care of a friend with directions to call 9-1-1 if the child's condition worsened

instead of getting the child immediate medical treatment.  Ristau argues that the trial

court erred in denying his motion for judgment of acquittal because the State failed to

present evidence that he neglected the child willfully or by culpable negligence. We agree and reverse.

The State presented evidence that Ristau, his girlfriend, and their one-year-old twin sons were staying in Winter Haven with the Winters family for a few days. At the time, Ristau was unemployed and unable to provide a home for his family. On the evening of October 23, 2014, the twins seemed "perfectly normal." In the late afternoon on the next day, Ristau brought the children to the Winters' home, and Mrs. Winters agreed to watch them while Ristau drove to the neighboring city of Bartow for a job interview.

One of the twins, A.R., was sleeping in his car seat, so Ristau removed the car seat from his vehicle and carried it into Mrs. Winters' house. After Ristau left the home, Mrs. Winters picked up A.R. and found him limp and unresponsive with his head flopped to the side. Mrs. Winters' neighbor was visiting, and the two women went into "panic mode." The women believed that A.R. needed immediate medical assistance and went outside to try to catch Ristau before he left the area. Mrs. Winters did not believe that Ristau realized that something was wrong with A.R., and she intended to tell him to take A.R. to the hospital or call 9-1-1. She said Ristau would not have left if he thought A.R.'s condition was serious.

Mrs. Winters and her neighbor were able to catch Ristau before he left the driveway, and Mrs. Winters told him that A.R. "needed medical attention." Ristau still did not believe that A.R. was in need of immediate medical assistance. He said he was still going to his job interview but told the women to call an ambulance if A.R.'s condition worsened.

The women returned to Mrs. Winters' house and noticed that A.R. was having trouble breathing. They called his name and put a cold rag on his face in an attempt to rouse him. A.R. cried out but went right back to sleep. At this point, Mrs. Winters' neighbor called 9-1-1. During the call, A.R.'s condition seemed to get worse. He began gasping for air, and his mouth appeared to be very dry.

An ambulance arrived and took A.R. to Winter Haven Hospital. There, he was triaged as high priority. He continued to have difficulty breathing, and his lips, tongue, and eyes were dry. He was cold and had a cut on his tongue which could have been from a seizure. The doctors inserted a breathing tube and periodically had to stimulate A.R. to get him to breathe by striking a pin across the bottom of his foot. They also provided fluids intravenously.

Because Winter Haven Hospital did not have a pediatric intensive care unit, A.R. was transferred to St. Joseph's hospital. He had a seizure while in route but was treated at St. Joseph's and fully recovered. The doctors were not able to offer a diagnosis of what had caused A.R.'s illness, but there was a strong possibility he would have died without medical attention.

Ristau returned to the Winters' home sometime after the ambulance had departed but while the police were still there. Ristau told the police that A.R. awoke that day with less than normal energy and he was fussy. After breakfast, A.R. slept for another two and a half hours. Ristau took the twins and their mother with him when he went driving around to look for scrap metal to sell. It was hot outside, and Ristau's vehicle did not have air conditioning. A.R. ate lunch, but he still did not appear to be feeling well. Ristau thought the heat might be contributing to A.R.'s symptoms, so he

drove the twins to the Winters' house and asked Mrs. Winters to watch the children while he went to his job interview.

Ristau said that the Winters' neighbor came outside with A.R. as he was leaving and told him that he needed to take A.R. to the doctor. Ristau told the neighbor that he would do so after his job interview. A.R.'s twin had just recovered from a cold, and Ristau thought that A.R. merely had the same cold. But he told the neighbor to call an ambulance if A.R.'s condition worsened before he returned.

Section 827.03(2)(b), Florida Statutes (2014), provides that "[a] person who willfully or by culpable negligence neglects a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the second degree." In Arnold v. State, 755 So. 2d 796, 798 (Fla. 2d DCA 2000), this court explained that the term " 'willfully' implies that a defendant has acted voluntarily and consciously, not accidentally." We also observed that the term "culpable negligence" is not defined in the statute. "This court has defined culpable negligence as 'consciously doing an act which a reasonable person would know is likely to result in death or great bodily harm to another person, even though done without any intent to injure anyone but with utter disregard for the safety of another.' " Id. (emphasis added) (quoting Azima v. State, 480 So. 2d 184, 186 (Fla. 2d DCA 1985)).

The culpable negligence standard requires more than mere negligence and is reserved for "only the most egregious conduct, done either willfully or with criminal culpability." Id. The defendant "must show a gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects; or that entire want of care which would raise the presumption of

indifference to consequences."  Id. (quoting State v. Greene, 348 So. 2d 3, 4 (Fla. 1977)); see also Fla. Std. Jury Instr. (Crim.) 16.5 ("For negligence to be called culpable negligence, it must be gross and flagrant.  The negligence must be committed with an utter disregard for the safety of others.").

Courts must determine culpable negligence on a case-by-case basis in consideration of the totality of the circumstances.  Ibeagwa v. State, 141 So. 3d 246, 247 (Fla. 1st DCA 2014).  The question is whether, when considering the facts in the light most favorable to the State, "the evidence is sufficient to establish a jury question regarding whether a defendant is culpably negligent."  Id.

While we agree that Ristau's conduct in leaving A.R. with Mrs. Winters was negligent, we do not agree that he acted willfully or with culpable negligence as required by section 827.03(2)(b).  There was no evidence that Ristau recognized the seriousness of A.R.'s medical condition and then willfully neglected A.R. or that he acted with utter disregard for the child's safety by leaving him in Mrs. Winters' care. A.R. was sleeping when Ristau dropped him off at the Winters' home, and the child was not showing any signs of distress at that time.  While Ristau might have done more to assess A.R.'s condition when Mrs. Winters and her neighbor told Ristau that A.R. "needed medical attention," Ristau had spent the day with A.R. and did not believe he was in need of immediate medical assistance.  Ristau would not have left if he thought A.R.'s condition was serious.

Additionally, Ristau indicated an intent to take A.R. to the doctor later that day and told the women to call for an ambulance if his condition worsened.  A.R. received regular pediatric care, and there was no evidence that would suggest Ristau

would not take him to the doctor later that day. Regardless, leaving a child with A.R.'s symptoms in the hands of a capable adult with directions to get emergency care if necessary is simply not willful neglect, "gross and flagrant," or "evincing reckless disregard" for the child's safety.

The facts of this case are analogous to those in Burns v. State, 132 So. 3d 1238 (Fla. 1st DCA 2014). In Burns, the defendant was babysitting his girlfriend's four children when her fifteen-month-old daughter fell out of her crib. Id. at 1239. The defendant told his girlfriend's ten-year-old son to call her and tell her about the incident. It appears that the defendant did not instruct the child to call 9-1-1. Id. at 1239 n.1. The mother returned about ten minutes later and found her daughter to be unresponsive with her head slumped forward and abnormal breathing. Id. at 1239. The mother called 9-1-1, and the child was transported to the hospital. During the examination, it was discovered that the child had serious internal injuries that would not have been caused by the fall from her crib but would also not have been apparent based on a visual inspection. Id.

The defendant was convicted of child neglect without causing great bodily harm based on his choice to call the child's mother instead of 9-1-1. Id. On appeal, the First District held that the State failed to prove that the defendant's choice to call the mother instead of 9-1-1 was done with culpable negligence. Id. at 1242. The district court concluded that there was no evidence that the defendant "should have known her injuries were so significant that any delay in calling 911 was likely to cause her death or great bodily harm." Id. The court noted that the State's witness testified the child could not have sustained the serious internal injuries by falling from her crib. Additionally, the

severity of the child's injuries was not readily apparent.  Id.  The court concluded that while the evidence may have established "a failure to use ordinary care, it did not rise to the level of willful or culpable negligence."  Id.

In this case, as in Burns, the child was unresponsive with his head slumped and abnormal breathing and the defendant delayed in obtaining emergency medical treatment.  See id. at 1239.  In both cases, the child was suffering from a serious ailment that was not obvious upon visual inspection.  And there was no apparent accident or injury in either case that should have put the defendant on notice of the likelihood of such ailment.  See id. at 1242.  As in Burns, there was no evidence the defendant "should have known [the child's] injuries were so significant that any delay in calling 911 was likely to cause [the child's] death or great bodily harm."  Id.; cf. Moore v. State, 790 So. 2d 489, 492 (Fla. 5th DCA 2001) (affirming a conviction for neglect of a child causing great bodily harm based on evidence that the child suffered a head injury while in the father's care and then suffered symptoms over the next few days that should have put the father on notice that the injury required medical attention).

In conclusion, the State failed to prove that Ristau had actual knowledge of A.R.'s serious medical condition or that he acted with utter disregard for the child's safety by leaving him in Mrs. Winters' care with directions to get emergency assistance if necessary.  Thus, the State failed to present evidence that he acted willfully or with culpable negligence and Ristau was entitled to a judgment of acquittal.  We therefore reverse and remand with directions for the trial court to grant Ristau's motion for judgment of acquittal.  Because the only lesser-included offenses contain the same

culpable negligence element,[1] we direct the court to order Ristau's immediate release from custody.

Reversed and remanded.

CASANUEVA and BADALAMENTI, JJ., Concur.

---

[1]The verdict form included the lesser offenses of child neglect without great bodily harm, § 827.03(2)(d), and culpable negligence, § 784.05(1), Florida Statutes (2014).