IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

KEVIN PATRICK KELLEY, JR.,

      Appellant,

v.

                                        Case No.    5D21-1569
                                        LT Case No. 2020-CF-000132-A
                                        CORRECTED

STATE OF FLORIDA,

      Appellee.
_____/

Opinion filed June 20, 2022

Appeal from the Circuit Court
for Citrus County,
Richard A. Howard, Judge.

Matthew J. Metz, Public Defender, and
Steven N. Gosney, Assistant Public
Defender, Daytona Beach, for Appellant.

Ashley Moody, Attorney General, Tallahassee,
and Kristen L. Davenport, Assistant Attorney
General, Daytona Beach, for Appellee.

 PER CURIAM.

     Kevin Patrick Kelley, Jr. appeals his conviction for neglect of a child,

arising from an incident where he drunkenly walked a four-year-old child

under his supervision down the middle of Apopka Avenue in Inverness, Florida. We conclude that although Kelley's behavior was negligent and irresponsible, it did not constitute "culpable negligence" based on the specific circumstances of this case. Therefore, we reverse because the trial court should have granted Kelley's motion for judgment of acquittal.

Background

At 4:30 p.m. on Saturday, February 1, 2020, an off-duty police officer turned onto Apopka Avenue in Inverness, which has a 25-mile-per-hour speed limit. He immediately saw Kelley swaying back and forth as he walked on the double yellow lines, in the middle of the road, next to a child seated atop a toy scooter. Both were in the middle of an otherwise empty two-lane road bordered by bicycle lanes and sidewalks which were available for their use.

Because there was no one on the road, the off-duty officer initially did not view the situation as "a big deal." At first, a hundred yards separated the officer's truck from Kelley and the child. While they moved forward fifty yards, the officer trailed them. In that time, three or four vehicles backed up behind the officer's truck. When the officer saw "some traffic" approaching from the opposite lane, he honked his horn twice. On the second honk, Kelley helped the child off the street and onto a sidewalk. In doing so, Kelley

2

stumbled and moved slowly. Off the street and on the sidewalk, the pair continued their walk to the park. The officer followed.

At trial, the officer testified that after spotting Kelley and the child he called the non-emergency line to request police assistance. According to the officer, "[i]t was cold, and that's why I made the attempt to get a law enforcement officer there . . . ."[1] While he waited for law enforcement to arrive, he observed Kelley fall to the ground at the park while the child played.

The off-duty police officer was not the only person to see Kelley fall that Saturday afternoon while he walked the child to the park, nor was he the only person to call for police assistance. In fact, his call was the second call law enforcement received that day about the child. The first caller reported that this was "not a real emergency," but she was calling out of concern for the "little kid." The caller described the child's state of dress and the effects of Kelley's intoxication, reporting to police that Kelley was staggering in the road and, at one point, "fell in the middle of the road."

When the on-duty police officer arrived at the park, he began questioning Kelley while the child played. Several witnesses testified that Kelley was incapable of speaking clearly and coherently and could not even

---

[1] The State concedes that the child's lack of appropriate clothing does not provide a legal basis for the conviction. Rather, it emphasizes that the child's state of dress illustrates the extreme nature of Kelley's intoxication.

3

provide his name to the on-duty officer. At the end of the encounter, the police arrested Kelley and called the child's mother to pick up her son from the park. When the child's mother returned home with her son, she noticed that the entire 24-pack of beer she purchased the night before was gone.

After his arrest, the State charged Kelley with neglect of a child. *See* § 827.03(2)(d), Fla. Stat. (2019). Following the State's case-in-chief, Kelley moved for a judgment of acquittal. He argued that his behavior was legally insufficient to support a conviction. The trial judge disagreed, denying the motion. Later, the jury returned a guilty verdict. Kelley argues the trial court erred in denying his motion. Specifically, he contends that his behavior did not constitute "culpable negligence," a necessary element of the offense of which he was convicted. We agree.

## Standard of Review

Kelley's motion for judgment of acquittal admits the facts in evidence and every reasonable inference from the evidence favorable to the State. *See, e.g.*, *Proko v. State*, 566 So. 2d 918, 920 (Fla. 5th DCA 1990) (citing *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974)). Trial courts should not grant motions for judgment of acquittal unless, when viewed in the light most favorable to the state, the evidence does not establish a prima facie case of guilt. *See id.* (citing *Lynch*, 293 So. 2d at 45). Accordingly, we review the

4

trial court's denial of Kelley's motion de novo, but only to determine whether the State presented legally sufficient evidence to support the verdict. *See Durousseau v. State*, 55 So. 3d 543, 556 (Fla. 2010).

In reviewing the evidence, we accept that "[s]ufficiency is a test of adequacy. Sufficient evidence is 'such evidence, in character, weight, or amount, as will legally justify the [verdict].'" *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981) (citing *Black's Law Dictionary* 1285 (5th ed. 1979)). Indeed, "[l]egal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal" in this context. *Id*.

## Neglect of a Child

Kelley challenges the legal sufficiency of his conviction for the crime of neglect of a child. *See* § 827.03(2)(d), Fla Stat. The Florida Legislature defines this offense to include "[a] caregiver's failure or omission to provide a child with the care, supervision, and services necessary to maintain the child's physical and mental health, including, but not limited, to . . . supervision . . . that a reasonably prudent person would consider essential for the well-being of the child." § 827.03(1)(e)1, Fla. Stat. The offense can encompass repetitive conduct or, as alleged here, "on a single incident or omission that . . . could reasonably be expected to result in, serious physical . . . injury or a substantial risk of death, to a child." § 827.03(1), Fla. Stat.

5

Kelley concedes that sufficient evidence supports his failure to supervise the child and that he was the child's caregiver during the incident. But he claims the State did not establish culpable negligence.

The crime of neglect of a child occurs when a person neglects a child "willfully or by culpable negligence," even if no bodily harm results. § 827.03(2)(d), Fla. Stat. "Culpable negligence" is not defined in the Florida Statutes, but it has been defined in Florida case law for more than eighty years. In 1939, the Florida Supreme Court "committed [itself] to the rule that the degree of negligence required to sustain imprisonment should be at least as high as that required for the imposition of punitive damages in a civil action." *Russ v. State*, 191 So. 296, 298 (Fla. 1939). Therefore, to establish culpable negligence, the State must adduce evidence showing a defendant acted with "a gross and flagrant character, evincing reckless disregard for human life" or an "entire want of care which would raise the presumption of indifference to consequences; or such wantonness or recklessness or grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others, which is equivalent to an intentional violation of them." *Id*.; *see also Aledda v. State*, 47 Fla. L. Weekly D425, D426 (Fla. 3d DCA Feb. 16, 2022) ("[T]he degree of negligence required to sustain a conviction for the crime of culpable negligence is

6

significantly higher than that necessary to sustain a recovery of compensatory damages in a tort case.").

Since *Russ*, Florida courts have continued to hold that only the most egregious conduct satisfies the culpable negligence standard. *See, e.g.*, *Ristau v. State*, 201 So. 3d 1254, 1257 (Fla. 2d DCA 2016) (holding that culpable negligence is reserved for "only the most egregious conduct, done either willfully or with criminal culpability" (quoting *Arnold v. State*, 755 So. 2d 796, 798 (Fla. 2d DCA 2000))); *Jones v. State*, 912 So. 2d 686, 688 (Fla. 1st DCA 2005) (holding that culpable negligence is "that degree of negligence that is so egregious, and flagrant, it would support a charge of manslaughter in case of death"); *Logan v. State*, 592 So. 2d 295, 299 (Fla. 5th DCA 1991) ("Culpable negligence depends on the extreme character of the conduct itself, not its mere illegality."). Accordingly, as distinguished from simple negligence, culpable negligence is gross and flagrant; it "*must be committed with an utter disregard for the safety of others*." *Ristau*, 201 So. 3d at 1257 (emphasis added) (citing Fla. Std. Jury Instr. (Crim.) 16.5; *see also Burns v. State*, 132 So. 3d 1238, 1240 (Fla. 1st DCA 2014) (stating that standard jury instruction for child neglect distinguishes culpable negligence from mere failure to use ordinary care and further case law defines it as "so

7

egregious, and flagrant, it would support a charge of manslaughter in case of death").

Analysis

We conclude the State did not present legally sufficient evidence to sustain the charge in this case because it did not establish that Kelley acted with culpable negligence.  Rather, it submitted evidence illustrating simple negligence or an incomplete regard for the child's care.  This does not satisfy the State's burden.  *See Kish v. State*, 145 So. 3d 225, 228 (Fla. 1st DCA 2014) (reversing conviction for child neglect where appellant's "incomplete regard for her children's care in this instance did not manifest an 'utter disregard' for their safety").

To put it mildly, Kelley's actions as the child's caregiver left much to be desired.  But he did not show an utter disregard for the child's safety. Although Kelley was severely intoxicated, he never left the child's side.  And when the off-duty officer honked a second time, Kelley helped the child onto the sidewalk.  Thus, his actions did not indicate an entire lack of care.  *See State v. Sammons*, 889 So. 2d 857, 858–60 (Fla. 4th DCA 2004) (finding evidence insufficient to support conviction for criminal child neglect when mother was drinking at bar and left child in car with windows down because she "[kept] an eye on her child rather than ignoring her").  Kelley's mere

8

physical presence guaranteed the child was not pushing his scooter down a road unattended. His presence also increased the child's visual profile and acted as a possible barrier between the child and a vehicle.

We acknowledge that the off-duty officer described the road as a "main thoroughfare." The State contends that given this description, a jury should have resolved whether Kelley's actions rose to the level of culpable negligence. But this contention elevates the off-duty officer's description of the road above the actual evidence presented about it on the day of the incident. *See Aledda*, 47 Fla. L. Weekly at D426 ("[T]he defendant's conduct is not viewed in a vacuum, but rather, through the prism of 'the circumstances surrounding the particular case.'" (quoting *Russ*, 191 So. at 298)); *Kish*, 145 So. 3d at 228 ("[T]he facts are critical . . . .").

The State's witnesses testified that with the exception of weekday rush hour, the road was lightly trafficked. On the Saturday afternoon in question, the off-duty police officer was initially the only car on the road with Kelley and the child. He had no trouble seeing either of them immediately and from over one hundred yards away. Throughout the course of the entire incident, three cars backed up behind the officer, and no car passed in the opposite lane. The road's speed limit was 25 miles per hour, but no evidence or inference

9

showed a car ever going that quickly.  Kelley was able to exit the road directly to a place of safety.

We do not foreclose the possibility that a caregiver could show "utter disregard" for a child's safety simply by accompanying them down the middle of a dangerous road.  *Cf. State v. Wynne*, 794 So. 2d 642 (Fla. 2d DCA 2001) (finding utter disregard when a caregiver abandoned his six-year-old child on the I-275 exit ramp on the drive home from school).  This, however, is not Kelley's situation.  And Kelley's conduct, while negligent and deeply irresponsible, did not rise to the egregious level of conduct necessary to show culpable negligence.  For this reason, we reverse and remand, directing the trial court to vacate the conviction and dismiss the case.

REVERSED and REMANDED, with directions.

TRAVER and NARDELLA, JJ., concur.
WALLIS, J., dissents, with opinion.

10

WALLIS, J., dissents, with opinion.

When determining whether the trial court erred in denying Kelley's motion for judgment of acquittal, we "must consider the evidence and all reasonable inferences from the evidence in a light most favorable to the State." McDuffie v. State, 970 So. 2d 312, 332 (Fla. 2007). After reviewing the record in this case and with this standard in mind, I believe that the State presented sufficient evidence showing that Kelley acted with culpable negligence and that the trial court properly denied the motion for judgment of acquittal. Therefore, I dissent.

I believe it is clear that Kelley's level of intoxication, which included falling in the paved roadway and being unable to speak clearly and coherently while answering simple questions, had a profound effect on his ability to supervise the child.[2] Although the majority concludes that Kelley never left the child's side and ultimately succeeded in exiting the road directly to a place of safety, it is reasonable to infer, as we must, that Kelley was unable to protect the child from potential oncoming traffic. It is likewise

---

[2] By Kelley's own admission to officers, he had "been drinking all day." There was also evidence suggesting that Kelley may have consumed a twenty-four pack of beer before leaving his house that day with the child.

11

reasonable to infer that Kelley's ability to supervise the child was significantly undermined by his extreme level of intoxication.

Furthermore, I cannot ignore the obvious fact that Kelley chose to walk with the child down the double yellow lines of North Apopka Avenue despite the existence of sidewalks on both sides of the roadway and despite the presence of multiple cars behind them and traffic approaching from the opposite direction. Taking the testimony in the light most favorable to the State, it is reasonable to infer that if not for the off-duty officer's actions a car could have hit the child. And, regardless of the speed of an oncoming car, it is reasonable to infer that this would result in significant harm or death to the child.

Although the majority concludes that these facts show mere negligence and deeply irresponsible behavior, I believe otherwise. The physical behaviors that Kelley exhibited show that he intentionally compromised his ability to function normally and exposed the child to the possibility of great bodily harm. I also believe the evidence, when taken in the light most favorable to the State, was sufficient to show that Kelley acted with culpable negligence—a flagrant disregard for the child's safety— because he allowed the child to ride down the middle of the road without adequate adult supervision. Therefore, in my view, the trial court correctly

12

concluded that the question of whether Kelley acted with culpable negligence was one for the jury. See Davis v. State, 703 So. 2d 1055, 1059–60 (Fla. 1997) (explaining that once the State provides competent, substantial evidence of each element of the crime, it is for the jury to consider the evidence and the credibility of the witnesses); Lanier v. State, 264 So. 3d 402, 406 (Fla. 1st DCA 2019) ("Based on the facts and circumstances of this case, there was sufficient evidence to establish a jury question regarding whether Lanier was culpably negligent."). I would affirm Kelley's conviction.