912 So.2d 686 (2005)
Jeffrey JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 1D03-5134.
District Court of Appeal of Florida, First District.
October 25, 2005.
*687 Nancy A. Daniels, Public Defender; and Jamie Spivey, Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General; and Alan R. Dakan, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
In this direct criminal appeal, Appellant seeks reversal of his conviction for a violation of section 825.102(3)(c), Florida Statutes (2002), for willfully or by culpable negligence neglecting a disabled person without causing great bodily harm, permanent disfigurement, or permanent disability, arguing that the trial court erred by not granting his motion for judgment of acquittal.[*] We agree and reverse.
The pertinent facts are not in dispute. Specifically, Appellant, a psychiatric technician, was charged for failing to monitor a patient on suicide watch every 15 minutes as ordered by the admitting psychiatrist for the crisis stabilization unit at Lakeview Center in Pensacola, Florida, Appellant's employer. Difficulties occurred because Appellant's shift was one psychiatric technician short, and Appellant was also responsible for continuously watching a patient housed in an unlocked room and deemed dangerous by the same admitting psychiatrist. Appellant could not physically implement both watch orders, and Appellant, who had no authority to change such orders, by necessity had to choose between the patients he was to watch. Appellant exercised his discretion and continuously watched the patient deemed dangerous, and while so doing, he was unable to physically check the other patient other than observe the door to her room from his station. During Appellant's shift, the *688 unattended patient under the 15-minute watch order died of a heart attack; no contention is made that Appellant's failure to monitor in any way contributed to such heart attack. All of the testimony relating to Appellant's actions established that Appellant correctly implemented the admitting psychiatrist's orders by continuously watching the dangerous patient rather than the other patient. These facts impelled the trial court to enter a judgment of acquittal, and mandate reversal here.
This court applies a de novo standard of review in reviewing a motion for judgment of acquittal. See Jones v. State, 790 So.2d 1194 (Fla. 1st DCA 2001); see also Pagan v. State, 830 So.2d 792 (Fla.2002). This court will not reverse a conviction where it is supported by competent, substantial evidence. See Pagan, 830 So.2d at 803. Sufficient evidence exists to sustain a conviction if, after viewing the evidence in the light most favorable to the State, a reasonable trier of fact could find the existence of the elements of the crime beyond a reasonable doubt. See id.; Banks v. State, 732 So.2d 1065 (Fla.1999).
Viewed in the light most favorable to the State, the evidence is insufficient to show that Appellant willfully or by culpable negligence neglected a disabled person as charged.
A willful act is defined in Black's Law Dictionary 1599 (6th ed.) as follows:
Proceeding from a conscious motion of the will; voluntary; knowingly; deliberate. Intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary.
See also Arnold v. State, 755 So.2d 796 (Fla. 2nd DCA 2000).
It is clear that Appellant's actions do not meet this definition. He possessed no ill motive towards the deceased patient; he merely exercised his discretion to deal with the most exigent circumstance: watching the dangerous patient who was a threat to hospital personnel. Such conduct is not "willful" as required for a conviction under section 825.102(3)(c).
Nor was Appellant guilty of culpable negligence. "Culpable negligence" is that degree of negligence that is so egregious, and flagrant, it would support a charge of manslaughter in case of death. See Fla. Std. Jury Instr. (Crim.) 7.7; see also Griffis v. State, 848 So.2d 422 (Fla. 1st DCA 2003). Appellant's conduct falls far short of meeting this high standard; Appellant was negligent, at most, and not culpably negligent. Accordingly, Appellant's conviction cannot be based on a culpable negligence determination.
Thus, we REVERSE Appellant's judgment and conviction and REMAND with instructions that he be discharged.
WEBSTER, J., concurs; BARFIELD, J., dissents with opinion.
BARFIELD, J., dissenting.
The majority states that appellant could not physically implement both the order to continuously watch a patient and to conduct the ordered 15-minute checks on patients under suicide prevention watch. The majority also makes the assertion that all of the testimony relating to appellant's actions established that appellant correctly implemented the psychiatrist's orders by continuously watching the dangerous patient rather than the patient at issue. The majority's recitation of facts is not, however, one of undisputed facts. It is instead a statement of some evidence presented to the jury, some facts the jury didn't hear, and some statements that are not supported by the record. An accurate statement of the evidence presented to the jury supports the decision of the trial judge to *689 deny the motion for judgment of acquittal and submit the case to the jury.
Karen Crockford, a nurse, testified regarding the physical layout of the area which included the nurses' station and the hallways branching off from the nurses' station. She testified you could see down the halls from the nurses' station, with the exception of the hallway where adolescents were housed. When asked if the person at the nurses' station would be free to leave that position if there was an adult client needing continuous observation, she responded that would be a judgment call, but she also testified that the nurses' station is visible from the hallways. If it were necessary to go down a hallway to check on a patient, the person could still have eye contact with the nurses' station. Melanie Barbaric, a registered nurse on duty during the shift in question, testified that there is a monitor divided into four screens so that four different areas can be monitored at one time.
Robert Patrick, the other psychiatric technician on duty during the shift in question, testified that he was responsible for making rounds and observing the client in the observation room from 11:30 p.m. until 4:00 a.m. He testified that he did each of his 15-minute checks as noted in the clinical records of the patient at issue. Although appellant testified that when there is an adult patient in the unlocked observation room who is known to be violent, he has to stay with that patient in the observation room for the safety of the rest of the unit, appellant also testified that he actually made rounds at 4:45. Appellant did testify that the patient under constant observation was asleep at the time he started the rounds, but that the patient was awake when he returned so that he had to remain at the nurses' station. He admitted that he falsified his observation log which indicated that he had made the 15-minute observation checks.
The psychiatrist testified regarding the process of admitting a patient to the psychiatric unit. She also described the levels of observation for patients. She then discussed her treatment of the patient at issue. When asked what happens to the ordered 15-minute observation checks of patients when there is an emergency during the shift, the psychiatrist testified that she could not answer that question, and that it would be a question for administrative and nursing personnel. There is no evidence that the psychiatrist ordered the appellant or any other psychiatric technician to watch the one patient in the continuous observation room near the nurses' station to the exclusion of the patient at issue.
There was no evidence presented to the jury that the patient at issue was found dead or suffered a heart attack. The jury was only told that the patient was found lying face down on the floor.
As noted in Jones v. State, 790 So.2d 1194, 1196-97 (Fla. 1st DCA 2001):
[T]he decision to grant or deny a motion for a judgment of acquittal is not one that calls for the exercise of judicial discretion. If the evidence is legally sufficient to support the elements of the alleged crime, the trial court has no discretion to acquit the defendant by taking the case from the jury. Conversely, if the evidence is not sufficient to support the elements of the alleged crime, the trial court cannot simply decide to submit the case to the jury anyway....
A criminal defendant may challenge the sufficiency of the evidence in the trial court by making a motion for a judgment of acquittal at the close of the state's case. See Fla.R.Crim.P. 3.380(a). The question presented by the motion is *690 whether the evidence is legally adequate to support the charge. As the supreme court explained in Lynch v. State, 293 So.2d 44, 45 (Fla.1974):
The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.
Because a motion for a judgment of acquittal presents an issue of law, the trial court's order on the motion is reviewed on appeal by the de novo standard of review.
The Florida appellate courts have consistently applied this standard, even though they have not often identified it by these terms. One familiar statement of the rule is that in reviewing an order denying a motion for a judgment of acquittal the appellate court must consider the evidence and all reasonable inferences from the evidence in a light most favorable to the state. See, e.g., Woods v. State, 733 So.2d 980 (Fla.1999); Lewis v. State, 754 So.2d 897 (Fla. 1st DCA 2000); Wallace v. State, 764 So.2d 758 (Fla. 2d DCA 2000); Nelson v. State, 753 So.2d 648 (Fla. 3d DCA 2000). This is a correct statement of the standard of review, but it is also the same standard the trial court must apply in ruling on the motion initially. By applying the same standard, the appellate courts are, in effect, reviewing the decision de novo. The sufficiency of the evidence to support a particular criminal charge, whether evaluated by the trial court or by an appellate court, is a question of law.
Id. at 1196-98 (footnote omitted; citations omitted).
Viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt. The evidence at trial was sufficient to support the conviction. Therefore, the trial court correctly denied the defendant's motion for a judgment of acquittal.
NOTES
[*] Also, Appellant was convicted of falsifying the records of a person receiving mental health services in violation of section 394.4615(11), Florida Statutes, but that conviction is not appealed and stands.